and we have an attorney in Houston, is that right? Yes.  And you look like you're ready for action. I am. Good morning. You're allowed to reserve three minutes for rebuttal. Yes, I do. So please proceed whenever you're ready. May it please the court, good morning. I represent Mr. Maldonado and I'm going to lead off, unless there's, obviously the court has some direct questions, we're talking about the issue about equal protection. In looking at that specific part of our brief, one of the things that really stands out to me in terms of discriminatory intent and disparate impact is the title of the law that was enacted. It's sort of in plain sight where we have the Undesirable Alien Act. So right there, at the initial point, it's a way they're looking at people as these people are undesirable and we're going to focus our attention on them. And it's based on their nationality, it's based on their race or ethnicity. And when we made the application before Judge Amon to discuss the issue, granted, we looked in terms of timing and I've addressed that, I do think that the government did forfeit that issue. When we're looking at it, what I was asking for was a hearing and we had put in the affidavit from Dr. Kang. Now, I understand that there's the case Sequillanda, which is, obviously there's a lot of amicus briefs and there's so much invested in terms of learned knowledge. And I won't even pretend to say that I have that level of understanding. But it seems clear that in looking at the Carrillo-Lopez case, that at least in that one case, I understand that's on appeal too. I thought it was overturned on appeal. Excuse me. It was overturned on appeal. I apologize. I just want to make sure we're all up to date. Yes. So, looking at that, there's clear, there's debate about this issue. Can I just back you up to the timeliness question? Yes. Because under Rule 12b-3, you have to raise these sorts of claims, defects of the indictment, pretrial, correct? Yes, Your Honor. Okay. And I understand your argument to be that this argument was not reasonably available to the defendant until after the District Court in Nevada issued its ruling. Is that a fair characterization of your argument? Yes, Your Honor. Okay. And tell me why that's so. And I'll just be up front. Now, why was it never available to be made? Because that's the question, right? Is whether it's available to be made until some judge endorsed it. I mean, let me ask you this. For example, now that the Ninth Circuit has reversed, is it your view that the argument is no longer available because there's no longer a case out there endorsing it? Judge O'Donnell. What does availability mean to you? And I'm trying to understand that. The logic of your question is straight on. And I think I'm caught in a trap, in essence, Judge. Because it didn't get raised in a timely manner. I mean, that's the trap, right? That's the trap. And that's why I really focused on the forfeiture issue more than anything else. It's the term of art, you know, available. And maybe that's imagination on my part. I mean, I got the case after trial. Counsel had it. And I looked at available arguments. And I'm a, I won't say aggressive, but maybe aggressive lawyer. And I don't want to abandon something that I think may have merit. But I do think the forfeiture has power, that argument. Because here, and I pointed out the irony here. You know, Mr. Maldonado is being held to, you know, his word. But here we had a lawyer. I made a pre-motion conference letter. Gave notice about my position, what I was seeking. It was clear. And the language from Mr. Paulson was, the judge asked him, are you objecting to this? He said no. And to me, you know, this isn't an issue of like a statute of limitations. This is something that's discretionary. And given that no, then at that point it's an abuse of discretion not to allow the motions to go forward. And just so I understand what you would argue the standard of review should be. You're arguing that because even if you were initially, you could have been labeled as untimely. And by you, of course, I don't mean you. I just mean you're applying. The argument could have been labeled as untimely. You argue that the government didn't properly object that it's untimely. Therefore, it wasn't forfeited. But how does that fit into Rule 52a and b in terms of whether something is harmless or plain error? Is your argument not still that, well, you're still entitled to have it reviewed under plain error? In which case, now you're out of luck, even more so than you were before. Because now even the Ninth Circuit has said that this is not a valid argument and there is nothing plain about this. Whereas your argument that because, in your view, the government didn't adequately object to timeliness. Now this effectively must be regarded as an issue that was raised in a timely manner. And therefore, is not subject to plain error review, but just harmless error review. The latter, Your Honor. And it's something we see in the common courts, in terms of the district court, sort of the laboratories where we see how laws are applied. This is something that was raised and considered. And the judge had the discretion to say, yes, I'm going to let this motion go forward. And she did. And that's what happened there. And indeed, I suppose you could argue that this is not just a forfeiture, but a waiver. It's not just you did something and you got away with it because the other lawyer was asleep at the switch. There was an explicit statement that no, we don't object, which is kind of invited. On the other hand, Mr. Euston, you've used up a lot of your time. You mentioned the Suhalanda case. The point isn't so much that they have a lot of amici and all kinds of smart people. Mr. Maldonado is a very smart lawyer, too, who's mastered all that information. The problem is that case is first in line. It's already been argued. And we're going to have to – we're probably short of in bank consideration. I think this panel is never going to get a shot at your argument because somebody else has got to decide it. And you will either have won it or lost it in that other case. And we'll have to follow what they do. So you might want to say something about some of the other arguments. Yes, Your Honor. I'll give you one extra minute. Okay. Thank you. I appreciate it. But we're going to keep it to that. Understood, Your Honor. In terms of – let me just talk about the NTA quickly. As I look at it, Nevis-Chavis talks about a unified NTA, that there's not a two-step process. And so when you have 1229, that's the authorizing statute, and you have the regulation following through implementing the statute. So the idea that it's simply a claims processing rule that I think Nevis-Chavis overturns that, and we have this intervening decision. So I think this panel can look at it. And then quickly, in terms of – I'm not sure, but since then we've had Banegas-Gomez that said that Nevis-Chavis didn't change anything. Well – We've held – we've heard your argument in Banegas-Gomez. We rejected it. I mean, I get it that after a new Supreme Court decision comes out, you can say, does that invalidate our precedent? But we have already said that it did not. Understood, Your Honor. So we're bound by that, right? Well, this is why I say I'm arguing not. I do think that Nevis-Chavis, it's focused on what an NTA is. And there was a code – No, but my point is we as a court have already spoken to the impact or lack of impact of Nevis-Chavis. Are we as a panel not bound by what a previous panel has said about the impact of Nevis-Chavis? The short answer is yes, Your Honor. So I guess that's my question is how – on what basis are you asking us to effectively overrule what a previous panel said? Well, there's – one part of my brief deals with Section 309 of the Code of Federal Regulations that – I'll look at it when I come back and then I'll tell you. But that code was not specifically addressed in Banegas-Chavis. I see. So you're going to argue that there's something that we did not deal with. An argument was not raised or considered in Banegas-Chavis. Thank you, Your Honor. I appreciate that. We'll come back to that during your rebuttal. Or you can do what you want during your rebuttal, if you like. Why don't we hear from counsel for the appellate? Thank you, Your Honor. May it please the Court. Nicholas Moskow for the United States. I'd like to start, Your Honors, and I will address some of the arguments raised by counsel. But I'd like to start by taking a step back. This is a case that was indicted in 2018. It's an illegal reentry case, and we're arguing in 2024, largely based on procedural issues that mask meritless arguments. So the counsel wishes to say that some of the procedural defects that we're pointing to aren't real procedural defects. But what's really at issue here is that counsel in the trial court pursued a very effective strategy of delay, which is the result that the defendant sought in this and in many similar cases. The fact that many of the arguments that are still preserved or still presented to this court were, in fact, precluded, has not prevented them from being the basis for ongoing litigation that's lasted for almost six years. That applies with equal force across the board. The arguments precluded by Rule 12b-3 should not be presented here. They have no merit, in addition to having been procedurally barred. Cherry v. Garland, which Your Honor was referencing, held in language that is unusually clear for this court, quote, Benegas-Gomez remains good law even after the Supreme Court's opinion in Nischavez. That's at 16 F. 4th at 987. It's very rare that we have something that clearly foreclosing an argument. And yet here we are arguing not only about whether or not that means what it says, but also about whether the argument that it's foreclosed is preserved. It's not. And beyond that, the NTA argument is entirely foreclosed by 1326d. There's ample authority for the proposition that 1326d and its three conjunctive requirements apply even in the context of challenges to the underlying jurisdiction of the immigration court. That's been held in cases including Bastide-Hernandez in the Ninth Circuit and Cortez cited by my adversary, 930 F. 3rd at 357, according to the Supreme Court's decision in Contract 540 U.S. at 455. That is one of many arguments that's been waived. We can talk about some of the waived Rule 29 and Rule 33 arguments. Those are the ones on which he may have the best argument in terms of the government's acquiescence to the motions ultimately being fired. But if we peek behind the curtain and look at the merits of the arguments, there's nothing there. There's a Rule 29 argument about the sufficiency of the evidence in a case with a confession. There's a Rule 33 argument relating to Allen charges in a case in which the district court never said that the jurors should consider the views of the other jurors. This is a case in which these procedural bars that would have precluded this litigation from being the morass that it has become could have served a useful purpose. The government did, in response to a pre-motion letter that was vague, did say, Your Honor, set a motion schedule, let's get this over with. That didn't mean that the government was waiving its objections to the arguments that counsel was presenting. The government didn't understand those objections, which comes through clearly in what AUSA Paulson said in court. Can I just ask one question? Mr. Muskie, you mentioned this strategy of delay. I'm just puzzled. Do you know where Mr. Maldonado is now? Mr. Maldonado is on supervised release in the United States at this time. He served his time. He had a four-month sentence, and that's served. But he is still in the United States. Yes, Your Honor. And what does this case have to do with whether he's still in the United States? I assume there are removal proceedings. Are there not? Your Honor, I don't know the status of the removal proceedings. I understood that there were removal proceedings in place and that he's on bail or was on bail in those proceedings. I haven't checked up. It doesn't really matter in a sense. I'm just wondering what he gains by a long-stretched-out litigation over the validity of a conviction that he's already served his principal sentence for, where, as far as I'm aware, there's no legal reason why the outcome of this case would matter to his immovability. Your Honor, insofar as one additional conviction adds something to the – some fuel to the fire. I imagine he would be removable even absent the conviction. Yes, because he's not legally here is the premise of the whole thing. Yes, Your Honor, and certainly that's the government's position. I'm sorry. I just was curious as to the status because you mentioned that. My understanding, Your Honor, is that in many cases, while litigation is pending in the district court and not as much in the court of appeals, the immigration proceedings are stayed. So the lengthy delay of the trial court's proceedings did inure to the defendant's benefit. However, at this stage, that's no longer the case. Fair enough. With respect to the merits of the equal protection argument, the government believes that's inappropriate to reach. As Judge Nardini noted, this is barred by Rule 12b-3 pretty squarely. However, as Judge Lynch noted, should that issue become an issue, it will be decided by Judges Newman, Nathan, and Lee in the Superlanda case, which was argued in October. We would note that there's no reason to delay a decision in this case because of the procedural bars to raising that challenge and the numerous other challenges at issue. However, should the courts be interested in the merits of any of the arguments, I remain available to talk about them. If not, the government's prepared to rest on our submission. That's fine. Thank you very much. Why don't we hear from counsel for the appellant, who's reserved a few minutes for rebuttal. Thank you. I just want to clarify, Mr. Maldonado is in immigration detention. So that's where he is, since he's in a removal proceedings. He doesn't have a legal basis. And he's not, so he's not on bail. No, he's not. So he's not at liberty. So we do want this to move forward. But let me just say just a couple of brief things. You know, the NTA issue is also being dealt with in Sacro Calanda as well. And I understand that the government is basically saying there is no issue that this court needs to address because of the timeliness. Again, the letter was clear, and it was discussed, and it was litigated. And it wasn't like an end run or anything other than putting issues in clear form what was being specified. So when the government says that it wasn't clear, the only thing that was murky, perhaps, was the Rule 33 issue. Because that had to deal with an internal issue that I had to get information from a former trial lawyer. But everything else, the equal protection issue, that was up front. And actually, I did misspeak about one thing. The NTA issue, I think this court is still open because in the government's brief, there's no contest about the timeliness of that issue. They did not object to that aspect of our motion practice. And I put that squarely in the brief. So that's in play. And obviously, there's a lead case on this. So I assume we have to wait for that decision. Are you aware of, or do you know, I should put it that way, do you know what the Supreme Court had before it just this week? I saw a press report, so I haven't yet been able to have the opportunity to look up what they're actually deciding. But from the possibly misleading press reports, it sounded like the Supreme Court is actually considering the question of the jurisdictional weight of not putting the dates in the original NTA. Do you know anything about that? We can look it up and find out what they're up to. The short answer is no, Your Honor. I did not see that. I think it was about in absentia removals, where the first notice did not contain the time and date. And then there was a subsequent one in whether that category, in absentia removals, I think had validity. But yeah, my recollection is it's a follow-up thematically on Ms. Chavez. I'm going to look at that, Your Honor. I appreciate you raising it. And I'll just say there was one section of the code, 309C2, and that's in the Immigration Reform and Responsibility Act. So that's the argument regarding Banagas' bill. I was just suggesting that we remain bound by our case law, but of course you have the right to continue to argue, not effectively to us, but for higher powers, that our case law is wrong. So you don't want to give that one up prematurely. But I wouldn't think you would, Mr. Houston. I know you from the district court. You're not going to give up easily. I appreciate everyone's time today. Everyone have a terrific day. Thank you. And thank you very much to both counsel. We appreciate your arguments, and we will take the case under advisement. So thank you. Thank you.